[No. 85366-5. En Banc.]
Argued September 22, 2011. Decided February 21, 2013.

BRUCE CEDELL, *Petitioner*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*.

*Stephen L. Olson* (of *Olson Zabriskie Campbell*), for petitioner.

*Curt E.H. Feig* and *Michael A. Guadagno* (of *Nicoll Black & Feig PLLC*), for respondent.

*Bryan P. Harnetiaux* and *George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Stewart A. Estes*, *Michael B. King*, and *Justin P. Wade* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Pamela A. Okano* and *Michael S. Rogers* on behalf of Washington Association of Mutual Insurance Companies, amicus curiae.

---

¶1 CHAMBERS, J.[*] — Bruce Cedell's home was destroyed by fire. After being unresponsive for seven months, his insurer threatened to deny coverage and made a take it or leave it one time offer for only a quarter of what the court eventually found the claims to be worth. Cedell brought suit, alleging bad faith. The company resisted disclosing its claims file, among other things, and Cedell moved to compel production. After a hearing and a review of the claims file in camera, the trial court granted Cedell's motion. On interlocutory review, the Court of Appeals held that the attorney-client privilege applies to a bad faith claim by a first party insured, that the fraud exception to the attorney-client privilege requires a showing of actual fraud, and that the trial court erred in reviewing Cedell's claims file in camera because Cedell had not made a sufficient prima facie showing of fraud. *Cedell v. Farmers Ins. Co. of Wash.*, 157 Wn. App. 267, 269-70, 237 P.3d 309 (2010). The Court of Appeals vacated the trial court's sanctions and discovery orders. This case turns on the application and scope of the attorney-client privilege in a claim for insurance bad faith. We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2 Cedell insured his home in Elma with Farmers Insurance Company of Washington (Farmers) for over 20 years.

---

[*] Justice Tom Chambers is serving as justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

In November 2006, when Cedell was not at home, a fire broke out in his bedroom. His girl friend, Ms. Ackley, called the fire department and carried their two-month-old child outside. The fire completely destroyed the second story of the home. Ackley claimed that a candle had started the fire.

¶3 The Elma Fire Department concluded that the fire was "likely" accidental. Clerk's Papers (CP) at 477. Farmers' fire investigator found "no physical evidence supporting an incendiary origin" and agreed with the fire department that a candle was "a possible, or even probable, source of ignition . . . consistent with the remaining physical evidence." *Id.* at 482. He stated that Ackley's "admission that she lit a 'flower candle' on the headboard" was "consistent with the acute burn patterns seen to the headboard and mattress," explaining that "[c]andles with foreign objects imbedded are frequent causes of accidental fires when the objects, such as dried flowers, substantially alter the candle's burning characteristics." *Id.* Farmers, nevertheless, delayed its coverage determination, noting that Ackley (who was not an insured) had given inconsistent statements.[1] Cedell alleges that Farmers ignored repeated phone calls and that he was forced to file a claim with the Office of the Insurance Commissioner and ultimately, eight months after the fire, hire an attorney to elicit action from his insurer.

¶4 In January 2007, a Farmers adjuster estimated that Farmers' exposure would be about $70,000 for the house and $35,000 for its contents. A few months later, a Farmer's estimator, Joe Mendoza, concluded that the fire-related damage to the residence alone was about $56,498. Farmers hired an attorney, Ryan Hall, to assist in making a coverage determination. Hall examined Cedell and Ackley under oath. In July 2007, Hall sent Cedell a letter stating that the origin of the fire was unknown and that Farmers might deny coverage based on a delay in reporting and Ackley's

---

[1] Apparently, Ackley had admitted that she and others at the house might have consumed methamphetamine on the day of the fire. Cedell himself swore under oath that he had not consumed methamphetamines and did not know Ackley had.

and Cedell's inconsistent statements about the fire.[2] The letter extended to Cedell a one-time offer of $30,000, good for 10 days. Cedell tried unsuccessfully to contact Farmers about the offer during the 10 days, but no one from Farmers returned his call.

¶5 In November 2007, Cedell sued Farmers, alleging, among other things, that it acted in bad faith in handling his claim. In response to his discovery requests, Farmers produced a heavily redacted claims file, asserting that the redacted information was not relevant or was privileged. Farmers also declined to answer some of Cedell's interrogatories on the ground of attorney-client privilege, including Cedell's question of why it "gave Bruce Cedell 10 days to either accept or reject the above offer." CP at 5.

¶6 Cedell filed a motion to compel. Relying on *Soter v. Cowles Publishing Co.*, 131 Wn. App. 882, 895, 130 P.3d 840 (2006), *aff'd*, 162 Wn.2d 716, 174 P.3d 60 (2007), Cedell contended that "the claim of privilege and work product in bad faith litigation is severely limited and does not apply" to the insurer's benefit in a bad faith action by a first party insured. CP at 2-3. Cedell moved for disclosure or, in the alternative, for an in camera review of the files. Farmers opposed the motion, argued that Cedell had to make an initial showing of civil fraud to obtain the full claims file, and sought an order "protecting from discovery all privileged communication with its counsel Ryan Hall." CP at 363; Verbatim Report of Proceedings (VRP) (Feb. 23, 2009) at 14.

¶7 Judge David Edwards held a hearing to consider the competing motions. He concluded that the insured was not required to make a showing of civil fraud before the claims file could be released but instead merely "some foundation [in] fact to support a good faith belief by a reasonable person that . . . there may have been wrongful conduct

[2] The redacted claims file suggests that Cedell called Farmers to tell them about the fire on November 27, 2006, two days after the fire.

which could invoke the fraud exception." VRP (Feb. 23, 2009) at 20-21 (citing *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001), *overruled by Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274 (2003)). Judge Edwards found that (1) Cedell was not home at the time of the fire, (2) the fire department and Farmers' fire investigator had concluded the fire was accidental, (3) Farmers knew the fire had left Cedell homeless, (4) a Farmers adjuster appraised the damage to the house at $56,498.84, (5) another adjustor estimated the damage at $70,000 for the house and $35,000 for its contents, (6) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (7) Farmers threatened to deny Cedell coverage and claimed he misrepresented material information without explanation, and (8) the damage to the house was eventually valued at over $115,000 and more than $16,000 in code updates. The judge found these facts "adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the fraud exception set forth in *Escalante* to the attorney-client privilege had occurred" and ordered the claim files produced for an in camera review. CP at 494-95; VRP at 21. He also awarded Cedell his attorney fees for the motion, capped at $2,500, and assessed punitive sanctions against Farmers of $5,000, payable to the court.

¶8 After reviewing the documents in camera, Judge Edwards, relying on *Barry v. USAA*, 98 Wn. App. 199, 205, 989 P.2d 1172 (1999), revised his view of what was required to release an unredacted claim file in a first party bad faith action:

> In the context of a claim arising from a residential fire, the insurer owes the insured a heightened duty – a fiduciary duty, which by its nature is not, and should not be, adversarial. Under such circumstances, the insured is entitled to discover the entire claims file kept by the insured without exceptions for any claims of attorney-client privilege.

CP at 487. He ordered Farmers to provide Cedell with all documents that it had withheld or redacted based on the attorney-client privilege, increased the sanctions payable to Cedell to $15,000, and increased the sanctions payable to the court to $25,000.

¶9 The Court of Appeals granted discretionary interlocutory review and reversed. The Court of Appeals found that "a factual showing of bad faith" was insufficient to trigger an in camera review of the claims file. *Cedell*, 157 Wn. App. at 278. The court below impliedly found that a showing that the insurer used the attorney to further a bad faith denial of the claim was not sufficient grounds to pierce the attorney-client privilege. *Id.* at 276-78.

¶10 We granted review. The Washington State Association for Justice Foundation, the Washington Defense Trial Lawyers, and the National Association of Mutual Insurance Companies submitted briefs as amici curiae.

## ANALYSIS

### A. STANDARD OF REVIEW

¶11 We review a trial court's discovery orders for abuse of discretion. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (citing *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 778, 819 P.2d 370 (1991)). We will reverse a trial court's discovery rulings "only 'on a clear showing' that the court's exercise of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). If the trial court rested its decision on an improper understanding of the law, we may remand for application of the correct one. *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004) (citing *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 369, 16 P.3d 45 (2000)).

B. SCOPE OF DISCOVERY GENERALLY

▮▮▮ ¶12 The scope of discovery is very broad. *Coburn v. Seda*, 101 Wn.2d 270, 276, 677 P.2d 173 (1984) (citing *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 434, 518 P.2d 1078 (1974)). The right to discovery is an integral part of the right to access the courts embedded in our constitution. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 776-77, 280 P.3d 1078 (2012) (citing *Doe*, 117 Wn.2d at 780-81). As we noted recently:

> Besides its constitutional cornerstone, there are practical reasons for discovery. Earlier experiences with a "blindman's bluff" approach to litigation, where each side was required "literally to guess at what their opponent would offer as evidence," were unsatisfactory. Michael E. Wolfson, *Addressing the Adversarial Dilemma of Civil Discovery*, 36 CLEV. ST. L. REV. 17, 22 (1988). As modern day pretrial discovery has evolved, it has contributed enormously to "a more fair, just, and efficient process." *Id.* at 20. Effective pretrial disclosure, so that each side knows what the other side knows, has narrowed and clarified the disputed issues and made early resolution possible. As importantly, early open discovery exposed meritless and unsupported claims so they could be dismissed. It is uncontroverted that early and broad disclosure promotes the efficient and prompt resolution of meritorious claims and the efficient elimination of meritless claims.

*Lowy*, 174 Wn.2d at 777. Because discovery is, by design, intended to be broad, a party wishing to assert a privilege may not simply keep quiet about the information it believes is protected from discovery; it must either reveal the information, disclose that it has it and assert that it is privileged, or seek a protective order. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (citing CR 37(d)); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 354, 858 P.2d 1054 (1993). A health care provider seeking to assert a privilege must seek a protective order. *Lowy*, 174 Wn.2d at 789. The best practice is for the trial court to require a document log

requiring grounds stated with specificity as to each document. *See Dreiling*, 151 Wn.2d. at 916-17; *see also Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 538-39, 199 P.3d 393 (2009) (emphasizing value of privilege log). The burden of persuasion is upon the party seeking the protective order. *See* CR 26(c); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (opponent of disclosure bore "heavy burden of showing why discovery [should be] denied").

## C. ATTORNEY-CLIENT PRIVILEGE IN INSURANCE BAD FAITH CLAIMS

 ¶13 When an insured asserts bad faith against his insurer in the way the insurer has handled the insured's claim, unique considerations arise. There are numerous recognized actions for bad faith against medical, homeowner, automobile, and other insurers in which the insured must have access to the claims file in order to prove the claim. For example, there are bad faith investigations, *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992); untimely investigations, *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793, 16 P.3d 574 (2001); failure to inform the insured of available benefits, *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 2 P.3d 1029 (2000); and making unreasonably low offers, *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140 (1996). A first party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 128, 196 P.3d 664 (2008); *Van Noy*, 142 Wn.2d at 793. The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's handling of a claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or employed by insurers

would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices.

¶14 To accommodate the special considerations of first party insurance bad faith claims, except for underinsured motorist (UIM) claims, the insured is entitled to access to the claims file. As our Court of Appeals has observed, "it is a well-established principle in bad faith actions brought by an insured against an insurer under the terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured." *Barry*, 98 Wn. App. at 204 (citing *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 326 (D. Mont. 1988)); *accord Escalante*, 49 Wn. App. at 394; *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986). In *Silva*, the Montana court noted, "The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim." *Silva*, 112 F.R.D. at 699-700.

¶15 *Barry* was a UIM case and, of course, we recognize a difference between UIM bad faith claims and other first party bad faith claims. The UIM insurer steps into the shoes of the tortfeasor and may defend as the tortfeasor would defend. Thus, in the UIM context, the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted. However, even in a claim alleging bad faith in handling of a UIM claim, there are limits to the insurer's attorney-client privilege.[3] Where there is a valid attorney-client privilege, the fraud exception is one of the exceptions that will pierce the privilege.[4] In a UIM context, the *Escalante* court set forth a two-step process to limit attorney-client privilege:

---

[3] The Court of Appeals misapprehended the application of the fraud exception. Both *Escalante* and *Barry* involved UIM claims in which the insurer was entitled to assert the attorney-client privilege.

[4] Of course, there is no reason to limit the grounds for piercing the privilege in the UIM context to civil fraud; it was merely the particular grounds at issue in that case. Since conduct short of fraud constitutes bad faith, requiring a threshold

First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud. The in camera inspection is a matter of trial court discretion.

*Barry*, 98 Wn. App. at 206 (citations omitted) (citing *Escalante*, 49 Wn. App. at 394; *Seattle Nw. Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 740, 812 P.2d 488 (1991)).

### D. Balancing Insurer's Need for Attorney-Client Privilege and the Insured's Need To Access the Claims File

¶16 We recognize that two principles we hold dear are in tension in insurance bad faith claims. The purpose of discovery is to allow production of all relevant facts and thereby narrow the issues and to promote efficient and early resolution of claims. The purpose of attorney-client privilege is to allow clients to fully inform their attorneys of all relevant facts without fear of consequent disclosure. *Escalante*, 49 Wn. App. at 393 (citing *Coburn*, 101 Wn.2d at 274). First party bad faith claims by insureds against their own insurer are unique and founded upon two important public policy pillars: that an insurance company has a quasi-fiduciary duty to its insured and that insurance contracts, practices, and procedures are highly regulated and of substantial public interest. *Van Noy*, 142 Wn.2d at 793; *St. Paul Fire*, 165 Wn.2d at 128-29.

¶17 To protect these principles, we adopt the same basic approach as the Court of Appeals did in *Barry*. We start from the presumption that there is no attorney-

showing of fraud to reach critical evidence requires too much. *Indus. Indem. Co. of Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990) ("an insurer's denial of coverage, without reasonable justification, constitutes bad faith"). As a leading treatise notes, bad faith in this context "is not the equivalent of actual fraud." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 204:116, at 204-140 (2005). In the context of first party insurance, bad faith may often be tantamount to civil fraud.

client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant. *Barry*, 98 Wn. App. at 204. However, the insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law.[5] Upon such a showing, the insurance company is entitled to an in camera review of the claims file and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured. *See Escalante*, 49 Wn. App. 375. If the trial judge finds the attorney-client privilege applies, then the court should next address any claims the insured may have to pierce the attorney-client privilege.[6]

¶18 The fraud exception to the attorney-client privilege is deeply rooted in our jurisprudence. *See* ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON § 501.03 2[h][ii], at 501-24 (4th ed. 2012) (citing *Craig v. A.H. Robins Co.*, 790 F.2d 1, 5 (1st Cir. 1986)). Our courts have followed a two-

---

[5] Where an attorney is acting in more than one role, insurers may wish to set up and maintain separate files so as not to commingle different functions.

[6] An asserted attorney-client privilege may also be subject to CR 26(b)(4). CR 26(b)(4) provides:

*Trial Preparation: Materials.* Subject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

step approach. The first step is to invoke an in camera review and requires a showing that a reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred. *Barry*, 98 Wn. App. at 208; *Escalante*, 49 Wn. App. at 394; *see also Seattle Nw. Sec. Corp.*, 61 Wn. App. at 740. The purpose of the in camera review is to determine "whether the attorney client-privilege applies to particular discovery requests, and whether appellants have overcome that privilege by showing a foundation in fact for the charge of civil fraud." *Escalante*, 49 Wn. App. at 394. *Escalante* suggests if an insurer engages in bad faith in an attempt to defeat a meritorious claim, bad faith is tantamount to civil fraud. *See id.* (citing *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974). We agree.

¶19 To summarize, in first party insurance claims by insured's claiming bad faith in the handling and processing of claims, other than UIM claims, there is a presumption of no attorney-client privilege. However, the insurer may assert an attorney-client privilege upon a showing in camera that the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function. Upon such a showing, the insured may be entitled to pierce the attorney-client privilege. If the civil fraud exception is asserted, the court must engage in a two-step process. First, upon a showing that a reasonable person would have a reasonable belief that an act of bad faith has occurred, the trial court will perform an in camera review of the claimed privileged materials. Second, after in camera review and upon a finding there is a foundation to permit a claim of bad faith to proceed, the attorney-client privilege shall be deemed to be waived. However, in first party UIM claims, there is no presumption of waiver by the insurer of the attorney-client privilege but, consistent with *Escalante*, 49 Wn. App. at 394, and *Barry*, 98 Wn. App. at 206, that privilege may be pierced, among other ways, by the two-step procedure described above for showing the bad faith civil fraud exception is applicable.

## E. Addressing the Facts of This Case

¶20 Farmers hired an attorney, Hall, to advise it on the legal issue of coverage. To the extent Hall issued legal opinions as to Cedell's coverage under the policy, Farmers would be able to seek to overcome the presumption favoring disclosure by showing Hall was not acting in one of the ways the insurer must act in a quasi-fiduciary way toward its insured. However, Farmers hired Hall to do more than give legal opinions. The record suggests that Hall assisted in the investigation. Hall took sworn statements from Cedell and a witness and corresponded with Cedell. Hall assisted in adjusting the claim by negotiating with Cedell. Seven months after the fire, Hall wrote to Cedell, offering a "one time offer" of $30,000, which was open for only 10 days, and threatened denial of coverage if the offer was not accepted. It was Hall who was negotiating with Cedell on behalf of Farmers, and it was Hall who did not return his calls when Cedell was attempting to respond to the offer. While Hall may have advised Farmers as to the law and strategy, he also performed the functions of investigating, evaluating, negotiating, and processing the claim. These functions and prompt and responsive communications with the insured are among the activities to which an insurer owes a quasi-fiduciary duty to Cedell.

¶21 Assuming Farmers was able to overcome the presumption of disclosure based upon a showing that Hall was not engaged in quasi-fiduciary activities, it was entitled to an in camera review and the redaction of his advice and mental impressions he provided to his client. Here, the trial court did examine in camera the documents to which Farmers asserted an attorney-client privilege. However, it is not clear the court followed the test we set forth today. We remand to the trial court for further proceedings consistent with this opinion.

## CONCLUSION

¶22 Cedell is entitled to broad discovery, including, presumptively, the entire claims file. The insurer may overcome this presumption by showing in camera its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating the claim. Upon such a showing, the insurance company is entitled to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in their quasi-fiduciary responsibilities to their insured. The insured is then entitled to attempt to pierce the attorney-client privilege. If the insured asserts the civil fraud exception, the court must engage in a two-step process to determine if the claimed privileged documents are discoverable. We reverse the Court of Appeals in part, affirm in part, and remand to the trial court for further proceedings consistent with this opinion.

C. JOHNSON, FAIRHURST, STEPHENS, and WIGGINS, JJ., concur.

¶23 ALEXANDER, J.[**] (dissenting) — Although I agree with the majority that we should remand to the trial court for "further proceedings," I disagree with its determination that these proceedings should be conducted consistent with the majority opinion. Majority at 690. I reach that conclusion because the majority incorrectly determines that an insurer, like Farmers Insurance Company, is not entitled to the protections provided by the statutory attorney-client privilege in a bad faith action by a first-party insured. That, of course, is the position advanced by the petitioner here, Bruce Cedell. As support for his petition, Cedell cited a

---

[**] Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

statement by the Court of Appeals in *Barry v. USAA*, 98 Wn. App. 199, 204, 989 P.2d 1172 (1999), that "in bad faith actions brought by an insured against an insurer under the terms of an insurance contract[,] . . . communications between the insurer and the attorney are not privileged with respect to the insured."

¶24 Farmers correctly observes that this statement was dictum and it points out that the *Barry* court, relying on *Escalante v. Sentry Insurance Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indemnity Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001), *overruled by Smith v. Safeco Insurance Co.*, 150 Wn.2d 478, 78 P.3d 1274 (2003), held that the attorney-client privilege did apply in the context of that case. Unlike the instant case, *Escalante* and *Barry* involved under-insured motorist (UIM) claims. But since this pair of UIM cases constitute the only Washington authority directly bearing on the question of the applicability of the attorney-client privilege in a first-party bad faith action, my analysis appropriately begins with a discussion of these cases.

¶25 In *Escalante*, the parents of a deceased automobile passenger brought a bad faith action against the UIM insurer of the automobile. In the course of litigating their claim, the parents sought materials relating to the insurer's evaluation of the claim, arguing that the attorney-client privilege did not protect information relevant to a bad faith claim. *Escalante*, 49 Wn. App. at 393. The Court of Appeals rejected this argument, albeit implicitly, recognizing the attorney-privilege codified by RCW 5.60.060(2). The court indicated that the privilege could be overcome by "a showing of a foundation in fact for the charge of civil fraud." *Id.* at 394. It did not, however, hold that the privilege is inapplicable in a bad faith action.

¶26 In *Barry*, an insured sued her insurance company, USAA, for bad faith for its failure to pay a UIM claim. During discovery, the insured requested reports from the

claims adjuster and correspondence from the attorney who handled the claim. After initially ordering USAA to submit the documents for in camera review, the trial court granted USAA's motion for reconsideration and denied the insured's request to inspect the claims file, concluding that the insured had failed to establish sufficient wrongful conduct to invoke the fraud exception to the attorney-client privilege.

¶27 On appeal, the Court of Appeals examined whether any of the documents the insured was seeking were privileged. The court began by making the observation set forth above that "it is a well-established principle in bad faith actions brought by an insured against an insurer . . . that communications between the insurer and the attorney are not privileged with respect to the insured." *Barry*, 98 Wn. App. at 204 (citing *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 326 (D. Mont. 1988); *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986)). The *Barry* court endorsed the rule articulated in *Silva* that " '[t]he time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.' " *Id.* (quoting *Silva*, 112 F.R.D. at 699-700). The court went on to say, however, that there was "good reason" to treat first-party bad faith actions involving the processing of UIM claims differently from other first-party claims. *Id.* It observed that "UIM carriers stand in the shoes of the underinsured motorist/ tortfeasor to the extent of the carrier's policy limits" and, consequently, are "entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor." *Id.* at 205 (citing *Dayton v. Farmers Ins. Grp.*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994)). "Because the provision of UIM coverage is by nature adversarial," the court explained, "an inevitable conflict exists between the UIM carrier and the UIM insured." *Id.* (citing *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 249, 961 P.2d 350 (1998)).

The court concluded that the "friction between this adversarial relationship and the traditional fiduciary relationship of an insured and an insurer" entitled the UIM insurer to the protections of the attorney-client privilege. *Id.*

¶28 The case before us is obviously distinguishable from *Escalante* and *Barry* because it did not arise in a UIM context. It is essentially akin to *Silva*, which involved a claim against an insurer for the loss of a house in a fire. *See Silva*, 112 F.R.D. at 699 ("The instant discovery dispute arises out of plaintiff's request that defendant produce its complete claims file concerning her fire insurance claim."). In *Silva*, the court ruled that "a plaintiff in a first-party bad faith action is entitled to discover the entire claims file kept by the insurer." *Id.* (citing *In re Bergeson*, 112 F.R.D. 692, 697 (D. Mont. 1986)). The court went on to hold that "the general rule in cases of this nature should be that the plaintiff is absolutely entitled to discovery of the claims file." *Id.* at 700. Under that general rule, Farmers would not be able invoke the attorney-client privilege to its benefit.

¶29 In our judgment, however, the distinction between UIM and non-UIM cases should not be dispositive. The rule endorsed by the Court of Appeals in *Barry* is based on the notion that an insurer in a non-UIM situation is a true fiduciary. *See Barry*, 98 Wn. App. at 205. But this court has repeatedly held that the relationship between insurer and insured is not a true fiduciary relationship. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 n.3, 196 P.3d 664 (2008); *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). Instead, a non-UIM, first-party insurer has merely a quasi-fiduciary relationship with an insured. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793, 16 P.3d 574 (2001). As the Supreme Court of Montana said in *Palmer ex rel. Diacon v. Farmers Insurance Exchange*, 261 Mont. 91, 861 P.2d 895, 906 (1993), "The nature of the relationship, not the nature of the cause of action, controls whether communications

between attorney and client can be discovered." Unlike a true fiduciary, an insurer is not required to put the interests of the insured ahead of its own. *Onvia*, 165 Wn.2d at 130 n.3. Rather, it must give the interests of the insured *equal* consideration. *Id.* Indeed, an insurance company also has a duty to its shareholders and other policyholders " 'not to dissipate its reserves through the payment of meritless claims.' " *Bosetti v. U.S. Life Ins. Co. in City of N.Y.*, 175 Cal. App. 4th 1208, 1237 n.20, 96 Cal. Rptr. 3d 744 (2009) (quoting *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072, 56 Cal. Rptr. 3d 312 (2007)). Thus, the "friction" that the court discussed in *Barry* is not limited to the UIM context. Given that an insurance company is entitled to give equal consideration to its own interests, it follows that it should be entitled to consult with counsel regarding its obligations under its policies. In our view, such communications should be protected by the attorney-client privilege in the absence of an applicable exception, such as the fraud exception discussed below.

¶30 As the Court of Appeals properly observed, "[w]hile an attorney's impressions may be relevant to a bad faith claim, an automatic removal of attorney-client privilege would frustrate the purpose of the attorney-client privilege without cause." *Cedell v. Farmers Ins. Co. of Wash.*, 157 Wn. App. 267, 275, 237 P.3d 309 (2010). Affording insurance companies the benefit of the attorney-client privilege will not, as has been suggested, enable the companies to conceal their entire claims files merely by employing attorneys as claims adjusters. In the present case, it is only the advice given by Hall to Farmers in his capacity as an attorney that is protected by the attorney-client privilege. *See* RCW 5.60.060(2)(a) ("communications made . . . in the course of professional employment"). In sum, we should hold that an insurer is entitled to the attorney-client privilege in a bad faith action by a first-party insured in the absence of an applicable exception to the privilege.

¶31 Here, Cedell claims the fraud exception. The question, therefore, is this: does the fraud exception to the

attorney-client privilege require a party seeking disclosure to show actual fraud or is a factual showing of bad faith sufficient? In *Escalante*, the court observed that the fraud exception "is usually invoked only upon a prima facie showing of bad faith tantamount to civil fraud." *Escalante*, 49 Wn. App. at 394 (citing *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974)). However, because of the proof problems inherent in requiring a prima facie showing at the discovery stage, the court held that "the privilege may be overcome by a showing of a foundation in fact for the charge of civil fraud." *Id.* (citing *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982)). *Escalante* further held that this showing could be accomplished after an in camera inspection of the relevant documents. The *Escalante* court adopted the two-step process developed by the Supreme Court of Colorado in *Caldwell* according to which a trial court first determines whether the party requesting in camera review has made a factual showing adequate to support a good faith belief by a reasonable person that " 'wrongful conduct' " sufficient to invoke the fraud exception has occurred and, if so, after subjecting the documents to in camera review, determines whether there is a "foundation in fact for the charge of civil fraud." *Id.* (citing *Caldwell*, 644 P.2d at 33).

¶32 Unfortunately, the court in *Escalante* did not define the precise contours of "wrongful conduct sufficient to invoke the fraud exception" or "bad faith tantamount to civil fraud."[7] In *Barry*, however, the Court of Appeals seemingly confined the fraud exception to actual fraud. After review-

---

[7] Notably, the authorities the court cited in *Escalante*, namely *Werley* and *Caldwell*, acknowledged that there was a division of opinion in cases as to whether the fraud exception embraced bad faith falling short of actual fraud. *See Caldwell*, 644 P.2d at 32 n.5 ("Because the present case involves a claim of fraud, we need not and do not reach the question of whether this exception to the attorney-client privilege extends to other forms of tortious conduct."); *Werley*, 526 P.2d at 32 n.12 ("In the case at bar it is unnecessary for us to choose between ['civil fraud' and 'tort' because] we find the alleged conduct of the petitioner to be both 'fraudulent' and 'tortious.' "); *see also* 2 EDWARD J. IMWINKELRIED, THE NEW WIGMORE: A TREATISE ON EVIDENCE: EVIDENTIARY PRIVILEGES § 6.13.2 (d)(1), at 1170 (2d ed. 2010) ("There is a split of authority over the breadth of the exception.").

ing the plaintiff's factual allegations, the court said, "While these allegations may be sufficiently supported by the record to establish a prima facie case of bad faith insurance . . . , they do not, in and of themselves, constitute a good faith belief that USAA committed fraud." *Barry*, 98 Wn. App. at 206-07. Accordingly, it held that the trial court's refusal to inspect the privileged documents in camera was not an abuse of discretion. *But see Seattle Nw. Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 741, 812 P.2d 488 (1991) (remanding "for a hearing to determine whether there is sufficient basis for good faith belief by a reasonable person that SDG may have acted in bad faith" and directing the trial court to "order an in camera inspection of the documents" if it "finds that such a preliminary showing has been made").

¶33 The Court of Appeals' decision below is consistent with *Barry*. After identifying the "distinct" elements of fraud and bad faith, the court stated that "[t]o qualify for the fraud exception to the attorney-client privilege, the plaintiff must show fraud, as opposed to just bad faith." *Cedell*, 157 Wn. App. at 278. It noted that in the present case,

> The trial court found that (1) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (2) Farmers threatened to deny Cedell coverage without explanation, and (3) the damage to the house was eventually determined to be far more than Farmers' $30,000 offer.

*Id.* Because there was "no evidence, for example, that Farmers knowingly misrepresented a material fact or that Cedell justifiably relied on a misrepresented material fact to his detriment," the Court of Appeals held that the trial court had abused its discretion by ordering an in camera review. *Id.*

¶34 The Court of Appeals' holding is also consistent with the view of the majority of jurisdictions that limit the exception to fraud. *See* 2 EDWARD J. IMWINKELRIED, THE NEW

WIGMORE: A TREATISE ON EVIDENCE: EVIDENTIARY PRIVILEGES § 6.13.2 (d)(1), at 1171-75 (2d ed. 2010). In *Freedom Trust v. Chubb Group of Insurance Cos.*, 38 F. Supp. 2d 1170, 1173 (C.D. Cal. 1999), for example, the court observed that "bad faith denial of insurance coverage is not inherently similar to fraud" because it "need not implicate false or misleading statements by the insurer. . . . The gravamen of fraud, however, is falsity." Therefore, the court concluded that "there is no persuasive reason to include bad faith in the fraud exception to the lawyer-client privilege." *Id.* A substantial minority of jurisdictions, however, recognize a broader version of the exception encompassing communications intended to further any crime or tort. 2 IMWINKELRIED, *supra*, at 1174. The Ohio Supreme Court extended the exception to documents demonstrating an insurer's bad faith in denying insurance coverage, stating that " '[d]ocuments . . . showing the lack of a good faith effort to settle . . . are wholly unworthy of the protections afforded by any claimed privilege.' " *Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209, 2001-Ohio-27, 744 N.E.2d 154, 157 (quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 1994-Ohio-324, 635 N.E.2d 331, 349). Such documents, moreover, are discoverable without the sort of preliminary showing of wrongful conduct required by *Escalante*. Rather, "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."[8] *Id.* at 158.

---

[8] Amicus Washington State Association for Justice Foundation (WSAJF) urges this court to adopt such a bright-line rule. *See* WSAJF Amicus Curiae Br. at 19. As Farmers points out, however, *Boone* was superseded by statute. Resp't's Answer to WSAJF Amicus Curiae Br. at 17 n.5. In 2006, the Ohio General Assembly amended Ohio Revised Code Annotated § 2317.02(A) to require a party seeking in camera review to make a prima facie showing of bad faith, fraud, or criminal misconduct, similar to the preliminary showing of "wrongful conduct" under step one of *Escalante*. *See* OHIO REV. CODE ANN. § 2317.02(A)(2) (West 2011). The General Assembly declared, "[T]he attorney-client privilege is a substantial right and . . . it is the public policy of Ohio that all communications between an attorney and a client in

¶35 This court has said, "Because the [attorney-client] privilege sometimes results in the exclusion of evidence otherwise relevant and material, and may thus be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege is not absolute; rather, it is limited to the purpose for which it exists." *Dietz v. John Doe*, 131 Wn.2d 835, 843, 935 P.2d 611 (1997) (citing *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968)). The attorney-client privilege exists in order to allow the client to communicate freely with an attorney without fear of compulsory discovery. Although this purpose is served by protecting communications regarding prior wrongful conduct, the privilege should not encourage the perpetration of such conduct. Engaging an attorney in order to further the bad faith denial of insurance coverage represents an abuse of the attorney-client privilege. We should hold, therefore, that communications related to an attorney's aiding an ongoing or future commission of bad faith by an insurer are discoverable if an in camera inspection reveals a foundation in fact of such wrongful conduct, provided that the party seeking disclosure first makes a factual showing adequate to support a good faith belief by a reasonable person that such conduct has occurred.[9]

---

that relation are worthy of the protection of privilege, and further that where it is alleged that the attorney aided or furthered an ongoing or future commission of insurance bad faith by the client, that the party seeking waiver of the privilege must make a prima facie showing that the privilege should be waived and the court should conduct an in camera inspection of disputed communications. The common law established in *Boone v. Vanliner Ins[urance] Co.* (2001), 91 Ohio St. 3d 209, *Moskovitz v. Mt. Sinai Med[ical Center]*, (1994), 69 Ohio St. 3d 638, and *Peyko v. Frederick* (1986), 25 Ohio St. 3d 164, [495 N.E.2d 918,] is modified accordingly to provide for judicial review regarding the privilege." 2006 OHIO LAWS 2292, § 6 (Am. Sub. S.B. 117).

[9] The holding I advance is similar to that which is dictated in Ohio due to a law passed by that state's general assembly in response to *Boone*. Ohio Revised Code Annotated § 2317.02 now provides that an attorney shall not testify concerning a communication made to the attorney by a client or the attorney's advice to a client "except that if the client is an insurance company, the attorney may be compelled to testify, *subject to an in camera inspection by a court*, about communications . . . *related to the attorney's aiding or furthering* an *ongoing or future* commission of *bad faith* by the client, if the party seeking disclosure of the communications has made a *prima facie showing of bad faith*, fraud, or criminal misconduct by the

¶36 In the present case, the trial court properly found that the facts alleged by Cedell supported a good faith belief that wrongful conduct sufficient to invoke the fraud exception has occurred; however, it did not meaningfully perform the second step of *Escalante* and subject Farmers' claims file to in camera review, basing its order compelling discovery of the entire file on the erroneous ground that an insurer is not entitled to the attorney-client privilege in a first-party bad faith action. I emphasize the points that in camera inspection is critical and the attorney-client privilege is not defeated merely by a claim of bad faith.

¶37 In sum, we should affirm the Court of Appeals' holding that an insurer may invoke the attorney-client privilege in a bad faith action by a first-party insured but reverse its holding that the fraud exception to the attorney-client privilege is limited to "actual fraud." As I have indicated, the exception applies to communications related to an attorney's aiding an ongoing or future commission of bad faith by an insurer. We should also affirm the Court of Appeals' reversal of sanctions and remand this matter to the judge who presided over this case with instructions to conduct an in camera inspection of Farmers' claim file consistent with this dissent.

MADSEN, C.J., and OWENS and J.M. JOHNSON, JJ., concur with ALEXANDER, J. PRO TEM.

Reconsideration denied April 9, 2013.

---

client." OHIO REV. CODE ANN. § 2317.02(A)(2) (West 2011) (emphasis added). In my judgment, this approach strikes the proper balance between the principle that justice is best achieved through the full disclosure of the facts and the important policy goals embodied by the attorney-client privilege.