## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TROY VARNEY and GERALYN VARNEY, husband and wife and their marital community, | No. 56174-3-II |
| Respondents/Cross-Petitioners, | (Consolidated with No. 56187-5-II) |
| v. | |
| CITY OF TACOMA, | UNPUBLISHED OPINION |
| Petitioner/Cross-Respondent. | |

CRUSER, A.C.J. — Tony Varney worked as a firefighter for the city of Tacoma and, in 2009, suffered a stroke after completing a 24-hour shift. After years of contentious litigation regarding the cause of his stroke, the Varneys[1] brought suit against the city, alleging, among other claims, abuse of process during the underlying workers' compensation litigation. In discovery, the Varneys sought documents relating to Varney's workers' compensation claim, and the city redacted and withheld certain documents under claims of attorney-client privilege and work product. The trial court ordered the city to produce unredacted copies of certain documents and certified issues from its order to this court on discretionary review. These issues are whether (1) documents protected by the attorney-client privilege are discoverable merely because they are relevant to, or could lead to the discovery of admissible evidence in support of, a plaintiff's tortious abuse of process claim, (2) internal communications between corporate employees and agents are

---

[1] This opinion refers to Tony Varney as Varney when referring to the underlying workers' compensation litigation, and it refers to both Tony and Geralyn Varney as the Varneys when referring to the plaintiffs in the current litigation.

protected by the attorney-client privilege, (3) communications between a corporation and its excess liability insurance carrier are protected by the attorney-client privilege, and (4) waiver of attorney-client privilege, either blanket or partial, applies in the context of the Varneys' abuse of process claim under the fraud exception.

We decline to address the first three issues because review of these issues was improvidently granted. Regarding the fourth issue, we hold that neither partial nor blanket waiver should be found because the fraud exception does not apply in the workers' compensation context. We remand for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

In July 2009, Varney suffered a hemorrhagic stroke after returning home from a 24-hour shift with the Tacoma Fire Department. Following the stroke, Varney filed a workers' compensation claim under the Industrial Insurance Act. The city self-insures workers' compensation claims.

In February 2010, the Washington State Department of Labor & Industries (Department) allowed Varney's claim. The parties then engaged in extensive litigation concerning the cause of Varney's stroke.

The parties went to trial in superior court, which resulted in a favorable verdict for Varney. The city did not appeal the verdict but continued to challenge Varney's claim before the Department. The Department subsequently directed the city to pay for Varney's treatment and time-loss compensation, but did not penalize the city for any unreasonable delay in payments or otherwise issue any sanctions against the city.

2

II. Current Litigation

In January 2019, the Varneys filed a complaint against the city, alleging abuse of process, tortious conduct,[2] outrage, discrimination, and a hostile work environment.

In response to the Varneys' discovery requests, the city produced over 19,000 pages of documents pertaining to Varney's workers' compensation claim. Some of these documents included communications from Tom Hall, the city's attorney; Angela Hardy, the city's industrial insurance coordinator; and Britta Holm, an account executive at Eberle Vivian, the city's third-party claims administrator for workers' compensation claims. In addition, certain documents contained communications between only Hardy and Holm, without the city's attorney copied on the communications. The city redacted portions of the documents and provided a privilege log for documents and portions of documents that the city believed were protected by attorney-client privilege or work product.

The Varneys then moved to strike the city's claims of attorney-client privilege and work product, arguing that they had a right to a full record of the city's investigation and handling of Varney's claim, as well as communications concerning the litigation that would reveal abusive and wrongful conduct by the city. The city also moved to compel complete discovery responses from the Varneys and moved for in camera review of two documents that the city inadvertently produced on the basis that they contained attorney-client privileged communications.

---

[2] "TORTIOUS CONDUCT" was the listed cause of action. Clerk's Papers at 36. This section of the complaint discussed "negligent claims handling by the City of Tacoma" and negligent and/or intentional infliction of emotional distress. *Id.*

The trial court appointed a special discovery master to review the documents listed on the city's privilege logs and report the following to the court:

> 1. Identify any portions of the communications and documents that were redacted or withheld by the City of Tacoma under a claim of attorney-client and/or work product privilege as identified on the City's privilege logs, which contain information relevant to or that could lead to the discovery of admissible evidence in support of Plaintiffs' tortious Abuse of Process claims; and

> 2. Inform the Court of his assessment as to whether the attorney-client and/or work product privilege applies to the portions of the communications and documents that were redacted or withheld by the City of Tacoma under a claim of attorney-client and/or work product privilege as identified on the City's privilege logs.

Clerk's Papers (CP) at 730-31.

Following review of the report by the discovery master and several status conferences, the trial court entered an order requiring the city to produce unredacted copies of certain documents that the discovery master identified as not protected by the attorney-client privilege and/or work product doctrine. In addition, the trial court ordered production of unredacted copies of certain documents "which are arguably covered by the attorney-client and/or work [product] privilege" but were "deemed . . . to contain information relevant to or that could lead to the discovery of admissible evidence in support of Plaintiffs' tortious Abuse of Process claims." CP at 1001. The court stayed the city's obligation to produce documents to allow the city to file formal written exceptions. After reviewing the city's exceptions, the trial court permitted the city to retain redactions for certain documents in its amended order on report of special discovery master, but otherwise ordered production of documents as described above. The court also "declined to apply a blanket waiver of attorney-client/work product privilege under a fraud exception as urged by" the Varneys. CP at 997.

No. 56174-3-II
Consolidated No. 56187-5-II

Both parties filed motions to certify issues for discretionary review.

The trial court granted the motions, certifying the following issues of law:

a.      Whether a trial court can order disclosure of communications protected by the attorney-client and/or work product privileges where the court has not identified a recognized legal exception to the privileges, but instead, has found that such communications contain information relevant to or that could lead to the discovery of admissible evidence in support of a plaintiff's tortious abuse of process claim;

b.      Whether internal communications between corporate employees and the corporation's agents about litigation strategy, where those communications are undertaken in response to advice given by the corporation's litigation attorney, are protected from disclosure by the attorney-client privilege; and

c.      Whether communications between a corporation and its excess liability insurance carrier about litigation strategy, where those communications are undertaken in response to advice given by the corporation's litigation attorney, are protected by a common interest privilege.

d.      Whether a partial or blanket waiver of attorney[-]client/work product privilege applies under the fraud exception in the context of plaintiff's tortious abuse of process allegations in this case.

CP at 949-50. This court granted discretionary review of these certified issues. Comm'r's Ruling

(Dec. 16, 2021).

DISCUSSION[3]

I. CERTIFIED QUESTIONS 1 THROUGH 3

Under RAP 2.3(b)(4), discretionary review may be granted when the superior court has

certified that an order "involves a controlling question of law as to which there is substantial

ground for a difference of opinion and that immediate review of the order may materially advance

---

[3] Because the ruling granting discretionary review specifically grants review of the issues certified by the trial court, this opinion does not review the trial court's discovery order itself.

the ultimate termination of the litigation." However, in this case, certified questions one through three ask hypothetical questions that are not tethered to the facts of this case, and they are not rooted in specifically referenced parts of the trial court's order of which the parties seek review. In that sense, we are in no better position to answer questions one through three than the trial court. Moreover, these questions can be answered by the trial court with a review of case law and secondary research materials. Therefore, our review of the first three issues certified by the trial court would result in an improper advisory opinion. *See Walker v. Munro*, 124 Wn.2d 402, 414, 879 P.2d 920 (1994). Accordingly, we decline to answer the first three issues certified by the trial court as review on these issues was improvidently granted. *See* RAP 7.3 ("The appellate court has the authority to determine whether a matter is properly before it, and to perform all acts necessary or appropriate to secure the fair and orderly review of a case.").

II. APPLICATION OF FRAUD EXCEPTION IN THE CONTEXT OF ABUSE OF PROCESS CLAIM

The fourth issue certified by the trial court asks "[w]hether a partial or blanket waiver of attorney[-]client/work product privilege applies under the fraud exception in the context of plaintiff's tortious abuse of process allegations in this case."[4] CP at 950.

Both parties, as well as the trial court, relied on *Cedell v. Farmers Insurance Co. of Washington*, 176 Wn.2d 686, 295 P.3d 239 (2013), an insurance case, for their analysis of this issue. *Cedell* dealt with the scope of attorney-client privilege in a first-party insurance bad faith claim. Cedell, the named insured, brought a claim for bad faith claims handling against his insurer

_____

[4] This court's ruling granting discretionary review acknowledged that the parties disputed whether the Varneys' suit includes a cause of action for insurance bad faith. Comm'r's Ruling (Dec. 16, 2021) at 8. Due to the language in the certified question, the ruling indicated that this court would only consider abuse of process in the context of the privilege issues here. *Id.*

and requested his claims file in discovery. *Id.* at 690. After a hearing on Cedell's motion to compel

production, the trial court ordered production of the entire claims file, unredacted. *Id.* at 692-93.

When discussing the scope of attorney-client privilege in an insurance bad faith claim, the court

explained that the claim "arises from the fact that the insurer has a quasi-fiduciary duty to act in

good faith toward its insured." *Id. at* 696. Therefore, "[t]o accommodate the special considerations

of first[-]party insurance bad faith claims, . . . the insured is entitled to access to the claims file" in

order to support the insured's claim. *Id. at* 697.[5] The court held that a first-party insured is

presumptively entitled to the claims file unless the insurer can overcome the presumption by

showing that counsel was "not engaged in a quasi-fiduciary function." *Id.* at 700. If the insurer

makes such a showing, the insured may still be able to pierce the attorney-client privilege following

a two-step process for asserting civil fraud. *Id.* at 700.[6]

     As an initial matter, the certified issue is not particularly clear. Read literally, it broadly

asks whether the crime/fraud exception to attorney-client privilege can apply in abuse of process

---

[5] The court then explained that the key distinction between a first-party bad faith claim and a UIM bad faith claim is that the UIM insurer "steps into the shoes of the tortfeasor" and, therefore, is entitled to the protections of attorney-client privilege in strategizing possible defenses. *Cedell*, 176 Wn.2d at 697. The privilege may be pierced if a valid exception applies, such as the fraud exception. *Id.*

[6] The two-step process is as follows:

> First, upon a showing that a reasonable person would have a reasonable belief that an act of bad faith has occurred, the trial court will perform an in camera review of the claimed privileged materials. Second, after in camera review and upon a finding there is a foundation to permit a claim of bad faith to proceed, the attorney-client privilege shall be deemed to be waived.

*Id.* at 700.

7

claims. The commissioner's ruling granting review, however, characterizes the question as whether the holding in *Cedell* "applies outside of a private first-party insurance context." Comm'r's Ruling (Dec. 16, 2021) at 8 ("This court accepts review of the first and fourth issues because even assuming *Cedell* applies outside of a private first-party insurance context, the *Cedell* waiver applies only to claims for bad faith insurance-related causes of action. The *Cedell* waiver has never been applied to an abuse of process claim."). We interpret the poorly-worded certified question, therefore, to be whether the *Cedell* waiver applies outside of the first-party insurance context. If it does not, and Varney is not a first-party insured in this context, then the *Cedell* waiver does not apply to the Varneys' abuse of process claim and the trial court cannot apply a waiver of privilege, either blanket or partial, to these documents.

The Varneys assert, without citation to authority, that RCW 51.32.185—the Presumption of Occupational Disease for Firefighters statute—which they claim is "forced on" Varney, creates an insurer-insured relationship between Varney and the city. Resp'ts' Response Br. at 32. He then relies on a collection of statutes, WACs, and cases that do not support his claim that he is a first-party insured in his workers' compensation claim against the city.

The city argues that, first, Varney is not a first-party insured or claimant in this context; second, that the city is not an insurer under RCW 48.01.050; and third, that the fraud exception to attorney-client privilege applied in insurance bad faith claims does not apply to the Varneys' claim for abuse of process. We agree with the city and answer the fourth certified question in the negative.

First, Varney did not have an insurance contract with the city, as the city notes. Varney's original claim was a workers' compensation claim, and he was in an adversarial rather than a

8

fiduciary relationship with the city as it related to that claim. Furthermore, in the context of the Washington Insurance Guaranty Association Act,[7] our supreme court has held both that the Department is not an insurer and that self-insured employers are not insurers. *Wash. Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 533, 859 P.2d 592 (1993), *Stamp v. Dep't of Labor & Indus.*, 122 Wn.2d 536, 542-44, 859 P.2d 597 (1993). Further, "Washington's public system of workers' compensation is not the equivalent of insurance." *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 15, 419 P.3d 400 (2018). *Cedell* does not apply to this case because the city is not a first-party insurer to Varney in his workers' compensation claim. Accordingly, the waiver of privilege as discussed in *Cedell* does not apply here.

## ATTORNEY FEES ON APPEAL

The Varneys request attorney fees under RAP 18.1 and various statutes and cases.[8] Parties requesting an award of attorney fees on appeal are required to include a separate section in her or his brief devoted to the request. RAP 18.1(b). The section in the brief must provide argument and citation to authority to apprise us of the appropriate grounds on which we may award attorney fees. *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Although the Varneys provide citation to authority, they do not provide any argument as to why the cited authority entitles them to fees. Resp'ts' Response Br. at 46 ("The basis for all claims is that the City intentionally and in bad faith used legal process to deny claims that it knew were valid as early as 2009, and continues

---

[7] Ch. 48.32 RCW.

[8] The Varneys request fees under "RCW 4.84.185, RCW 51.32.185, the Court's equitable powers, *McGreevy v. Oregon Mut. Ins. Co.*, 128 W[n].2d 26, 904 P.2d 731 (1995)[,] and *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991)." Resp'ts' Response Br.

No. 56174-3-II
Consolidated No. 56187-5-II

it[s] wrongful conduct to the present."). Accordingly, we deny the Varneys' requests for fees on appeal.

## CONCLUSION

We hold that review of the first three issues certified by the trial court was improvidently granted and decline to address those issues. Further, we hold that the waiver of privilege as discussed in *Cedell* does not apply in the workers' compensation context. We remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, A.C.J.

We concur:

Lee, J.

Price, J.

10