**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 14, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 14, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HEATHER STRATFORD and WILLIAM B. GEIBEL, JR., individually and their marital community, | ) ) ) ) | |
| Respondents, | ) ) | No. 100717-5 |
| v. | ) ) | En Banc |
| UMPQUA BANK, an Oregon corporation; and BRYAN JARRETT, an individual, | ) ) ) ) | |
| Petitioners. | ) ) | Filed: September 14, 2023 |

OWENS, J.—The parties to a lawsuit have a broad right to discovery, subject to narrow limitations in the Civil Rules. A party may seek a protective order to limit discovery under CR 26(c), which requires the party to show that good cause for the protective order exists. This case requires us to decide whether Washington recognizes the "apex doctrine," which shields certain high-ranking officials from deposition unless the proponent can first show that the witness has personal

*Stratford v. Umpqua Bank*
No. 100717-5

knowledge of the facts and that less intrusive means of discovery have been unsuccessful.

Respondents Heather Stratford and William Geibel Jr. (collectively Stratford) sued petitioner Umpqua Bank and its loan officer for negligent hiring and fraud, among other claims. After written discovery, Stratford sought to depose three high-level Umpqua executives. Umpqua moved for a protective order, arguing the executives had no personal knowledge and the apex doctrine shielded them from deposition. The trial court denied the motion. We granted Umpqua's petition for review to decide whether Washington does or should follow the apex doctrine.

We answer these questions in the negative. The apex doctrine has not been adopted by any court in this state. We decline to adopt the doctrine because it improperly shifts the burden of proof in violation of our discovery rules and it undermines the right of access to courts. Moreover, it is not universally accepted or applied consistently across jurisdictions. Accordingly, we affirm the trial court's denial of Umpqua's protective order and remand for further proceedings.

## FACTS

Bryan Jarrett worked as an insurance agent for several years. Clerk's Papers (CP) at 114. During his employment, Jarrett submitted fictitious insurance

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

applications and attempted to conceal his misconduct. *Id.* at 114-21. In 2014, the

Office of Insurance Commissioner (OIC) investigated Jarrett and revoked his license.

*Id.* at 119-21.

In 2015, Umpqua hired Jarrett as a home lending retail loan officer. *Id.* at 129-

30, 158-68. As part of the hiring process, Jarrett cleared a criminal background check.

*Id.* at 159-60. Umpqua did not learn about Jarrett's OIC disciplinary record during its

preemployment screening and "was not provided with any information from

Mr. Jarrett or from any third party that would prohibit him from acting as a loan

officer." *Id.* at 181.

Unfortunately, Jarrett's conduct as a loan officer resulted in numerous customer

complaints. *See, e.g.*, *id.* at 132-34, 138-42, 143-44. In February 2016, Umpqua met

with Jarrett to take corrective action but did not terminate his employment at that

time. *Id.* at 149-51, 143.

In late 2016, Stratford met Jarrett at the Umpqua Spokane offices to discuss a

construction loan. *Id.* at 4. Jarrett told Stratford that "'his builder,' Tony Begovich,

would be a better option" than her proposed builder. *Id.* at 55. Jarrett said Begovich

worked on other projects with Umpqua and had performed on time, within budget. *Id.*

In May 2017, Stratford and Begovich entered into a construction agreement

with a quoted budget of $402,268 to be completed in approximately seven months.

*Id.* at 78-87. To fund the project, Stratford obtained a construction loan from

*Stratford v. Umpqua Bank*
No. 100717-5

Umpqua, executed in July 2017. *Id.* at 187-99. Shortly thereafter, Begovich began construction. *Id.* at 202-03. In November 2017, while construction was ongoing, Umpqua fired Jarrett. *Id.* at 143.

Begovich did not finish building Stratford's home, which was damaged by exposure to the elements. *Id.* at 202-03, 60-61. In March 2020, Stratford sued Begovich, his company, and his subcontractors for breach of contract, fraud, and negligence. *Id.* at 201-05. In November 2020, a trial court awarded Stratford a total of $554,631.17 in damages. *Id.* at 230-35.

In May 2021, Stratford sued Jarrett and Umpqua for multiple causes of action, including negligent misrepresentation, fraud, and negligent hiring.[1] CP at 1-12, 12-20. Umpqua answered and asserted affirmative defenses. *Id.* at 21-30. The parties engaged in extensive and contentious written discovery for months until filing cross motions for summary judgment. *See, e.g.*, CP at 811-15, 774, 819-60, 863-78, 902-13; CP at 31-168, 158-237.

In January 2022, Stratford issued subpoenas to three Umpqua executives: (1) Cort O'Haver, the president and chief executive officer (CEO) of Umpqua Holdings Corporation, (2) Sheri Burns, the chief people officer at Umpqua, and (3) Kevin Skinner, the head of Umpqua's home lending division. *Id.* at 499. The

---

[1] Stratford later released Jarrett from the lawsuit pursuant to a settlement agreement. *See* CP at 970-73.

4

*Stratford v. Umpqua Bank*
No. 100717-5

parties discussed the purpose of the depositions and were ultimately unable to agree about whether they were necessary. *Id.* at 499-500.

Umpqua moved for a protective order. *Id.* at 601-14, 499-501. It argued deposing its senior executives ("apex" officers) was unnecessary and appeared to be merely a harassment tool. *Id.* at 502. It asserted the executives "were not involved in [Stratford's] loan, they did not supervise Jarrett, they did not hire Jarrett, nor did any of them have any involvement with Jarrett's termination from the Bank." *Id.* at 503. Of the three proposed deponents, only Skinner was "vaguely aware of who Jarrett is" due to this litigation. *Id.* Umpqua emphasized that "none of these three APEX officers have any personal knowledge relevant to [the] claims," yet Stratford sought "to depose them before taking testimony from any other witness with actual knowledge of the underlying facts alleged." *Id.*

In support of its motion, Umpqua submitted a declaration from Skinner. *Id.* at 495-98. Skinner was not involved with Jarrett's hiring or termination because he became executive vice president for home lending in January 2020. *Id.* at 496. Skinner stated that he and the other deponents needed to invest "incredible amounts of time and resources in the continued bank operations" because the bank was undergoing a merger. *Id.* at 497.

Before filing a response to the protective order, Stratford offered to "withdraw the O'[H]aver notice and proceed only with the depositions of Skinner and Burns" if

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Stratford v. Umpqua Bank*
No. 100717-5

Umpqua agreed to withdraw its motion for a protective order. *Id.* at 647. Umpqua apparently did not respond.

The next day, Stratford filed her response, arguing that Washington has not adopted the apex doctrine and urging the court to deny the protective order because Umpqua failed show good cause under CR 26(c). *Id.* at 614-27. She specifically criticized Umpqua for failing to describe any harm or prejudice that would result from the depositions. *Id.* at 621.

The trial court held a discovery hearing. Stratford argued she wanted to depose O'Haver, via Zoom, because the CEO is responsible for complying with fiduciary duties and disclosures in highly regulated, publicly traded companies. Verbatim Tr. of Proc. (Feb. 11, 2022) (VTP) at 10. Counsel wanted to ask O'Haver about bankwide calls related to hiring policies and other issues that are "relevant for the jury to hear certainly." *Id.* at 11.

Umpqua responded that it is "premature" to go directly to the CEO and pointed out that Stratford's offer to take O'Haver off the deposition list is "a clear admission" that his deposition is unnecessary. *Id.* at 12. Umpqua then argued that neither Burns nor Skinner had personal knowledge of Jarrett; Umpqua conceded that they may be relevant later but maintained it wanted "to streamline and not burden these folks." *Id.* at 17.

6

*Stratford v. Umpqua Bank*
No. 100717-5

The trial court denied Umpqua's protective order. CP at 653-54. In an oral ruling, the court reasoned:

> Washington law has some pretty . . . easy discovery rules, pretty wide discovery. And considering the claims that the plaintiff's making . . . how [Stratford's counsel] decides who he thinks is relevant to prove his case is up to him. He doesn't have to ask for a [corporate deposition under CR 30(b)(6)] if he doesn't want to. And if he believes that these witnesses . . . have valid information . . . on . . . policies and procedures, hiring, offering.

VTP at 17-18. The court continued,

> [T]he burden is on the defendant or the moving party to show why this basically would not be necessary or relevant, and . . . basically unduly burdensome. He's offering to do a Zoom deposition, and work around their schedules, and it's not unreasonably duplicative, and it could be important to his case.
>
> . . . .
>
> [A]t this point [Stratford's counsel] met his burden to show that these would be important and could lead to discoverable or admissible evidence to prove his case.

*Id.* at 18-19.

Umpqua moved for an emergency stay of the depositions and sought direct review. We granted the stay and review. The Washington State Association for Justice Foundation filed an amicus curiae brief in support of Stratford.

ISSUE

Should Washington adopt the apex doctrine?

7

*Stratford v. Umpqua Bank*
No. 100717-5

## ANALYSIS

We granted review to consider whether the apex doctrine is consistent with our discovery rules. This is a question of law that we review de novo. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

I.    WASHINGTON DOES NOT RECOGNIZE THE APEX DOCTRINE

a.    Principles of Discovery in Washington

The "right to discovery is an integral part of the right to access the courts embedded in our constitution." *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 695, 295 P.3d 239 (2013); *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 782-83, 819 P.2d 370 (1991) (the right of access is implicated whenever a party seeks discovery). "The purpose of discovery is to allow production of all relevant facts and thereby narrow the issues and to promote efficient and early resolution of claims." *Cedell*, 176 Wn.2d at 698; *see also Doe*, 117 Wn.2d at 782.

The Civil Rules provide a broad right of discovery subject to relatively narrow restrictions set forth in CR 26. *Doe*, 117 Wn.2d at 782. A trial court properly limits discovery if it determines that

> (A) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
> (B) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Stratford v. Umpqua Bank*
No. 100717-5

> (C) the discovery sought is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties, resources, and the importance of the issues at stake in the litigation.

CR 26(b)(1).

A court may limit discovery upon its own initiative or on a motion for a protective order under CR 26(c). Under CR 26(c), for good cause shown, a trial court may enter an order to protect a person or party from annoyance, embarrassment, oppression, undue burden, or expense. *Barfield v. City of Seattle*, 100 Wn.2d 878, 885, 676 P.2d 438 (1984); CR 26(c). A party establishes good cause by showing that a protective order would avoid the threat of a harm listed in CR 26(c) without impeding the discovery process. *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 232, 654 P.2d 673 (1982). The burden of persuasion rests with the party or person seeking the protective order. *Cedell*, 176 Wn.2d at 696.

      b.     <u>Background on the Apex Doctrine</u>

The "apex doctrine," in those jurisdictions in which it is recognized, varies greatly. At its most basic level, it "shields certain high-ranking officials from being deposed." *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6 (D.D.C. 2018). The doctrine is meant to prevent unwarranted harassment and abuse of the discovery process, recognizing that adversaries may use depositions of certain high-level officers to their advantage. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2012); *Zimmerman*, 329 F.R.D. at 6; *BlueMountain Credit Alts. Master Fund L.P. v. Regal Entm't Grp.*, 2020 COA 67, ¶ 28, 465 P.3d 122, 130.

Under the iteration of the apex doctrine proposed by Umpqua, a party seeking to depose a high-level officer at the 'apex' of a corporate hierarchy must first show that the witness "[1] has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and [2] that other less intrusive means of discovery such as interrogatories and depositions of other employees, have been exhausted without success." *Robinett v. Opus Bank*, No. C12-1755MJP, 2013 WL 5850873, at *5 (W.D. Wash. Oct. 30, 2013) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). This shifts the burden to the party *seeking* discovery rather than the party resisting it as required by general discovery principles and our Civil Rules. *See BlueMountain*, 465 P.3d at 131; *Cedell*, 176 Wn.2d at 696; CR 26(c).

c.     Washington Has Not Adopted the Apex Doctrine

No reported Washington opinion has explicitly adopted the apex doctrine, at least not in name. Umpqua argues *Shields v. Morgan Financial, Inc.*, 130 Wn. App. 750, 125 P.3d 164 (2005) and *Clarke v. Office of Attorney General*, 133 Wn. App. 767, 781, 138 P.3d 144 (2006), essentially adopt the apex doctrine. We disagree.

i.     Shields *Applied CR 26(b)(1) and (c), Not the Apex Doctrine*

Shields sued her mortgage lender and broker for violations of the Consumer Protection Act, ch. 19.86 RCW. *Shields*, 130 Wn. App. at 752, 756. The lender

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

produced a corporate designee to testify about Shields' loan, the lender's interaction with brokers, and its disclosure procedures. *Id.* at 754. Shields then sought to depose the lender's chief financial officer and chief compliance officer. *Id.* The trial court granted the lender's motion for a protective order, noting that neither officer had personal knowledge of Shields' file. *Id.*

On appeal, Shields argued the trial court erred in granting the protective order. *Id.* at 758. The Court of Appeals disagreed and affirmed, reasoning that the officers had no knowledge of any specific facts, the lender produced a senior executive to testify, and CR 26(c) permits regulation of discovery for good cause when it is "unreasonably cumulative or duplicative" or "unduly burdensome or expensive, taking into account the needs of the case." *Id.* at 759-60.

*Shields* did not adopt or apply the apex doctrine; it simply affirmed the protective order *based on CR 26 factors*. Although *Shields* noted that the officers had no knowledge of the underlying facts, its holding emphasized the trial court's *discretion* in limiting discovery based on the needs of the case. The court did not hold that Shields would have had to show that the witnesses had unique, nonrepetitive, firsthand knowledge of the facts and that less intrusive means of discovery had been exhausted without success.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Stratford v. Umpqua Bank*
No. 100717-5

> ii.     Clarke *Did Not Apply the Apex Doctrine and It Involved Public Rather Than Private Officials*

Clarke sued the attorney general's office for wrongful termination. *Clarke*, 133 Wn. App. at 775. After written discovery, Clarke moved to compel the deposition of the former attorney general and then current governor of the state. *Id.* at 777. The trial court denied Clarke's motion to compel. *Id.*

On appeal, Clarke argued her discovery motion should have been granted because the governor had been the attorney general during her employment and had "relevant firsthand knowledge" about defending cases, hiring and terminating employees, and managing the office. *Id.* at 781. The Court of Appeals disagreed, noting the governor had no personal knowledge about Clarke or her termination and had not even managed Clarke's division. *Id.* at 782. The court "agree[d] with the federal cases that protect high-ranking government officials from discovery when other available witnesses can provide the same information" and held "the trial court did not err when it substantively denied Clarke's motion to compel the governor's deposition." *Id.*

*Clarke* did not adopt the apex doctrine as proposed by Umpqua. It agreed with federal cases protecting high-ranking government officials who "'have greater duties and time constraints than other witnesses'" and "'should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" *Id.* at 781 (internal quotation marks omitted) (quoting *In re United States (Reno)*, 197

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

F.3d 310, 313 (8th Cir. 1999)). The court did not hold that Clarke would have had to show that the governor had unique, nonrepetitive, firsthand knowledge and that she had exhausted other means. It simply affirmed the trial court's denial of the motion to compel based on the deferential standard of review, noting that others would be better sources for the information sought.

Moreover, *Clarke* involved a public official not a corporate CEO. Umpqua acknowledges this but asserts that the court's rationale is not limited to public employees. This position is unfounded. The cases cited explicitly discuss that high-ranking *governmental officials* should not be deposed to explain their *official actions*. This reasoning does not naturally extend to corporate officers. *See Zimmerman*, 329 F.R.D. at 6 (explaining that the apex doctrine "derives from the premise that *government officials* should be allowed to perform their duties without undue disruption and reflects a desire to protect the integrity of the administrative process" (emphasis added)). Umpqua's argument that there is "no principled or explained reason" not to extend the doctrine ignores obvious differences between public officials and corporate executives. Pet'r's Opening Br. at 18.

In sum, the apex doctrine's requirement that high-level officials cannot be deposed absent a showing that they have unique, nonrepetitive, firsthand knowledge of the facts and that other methods of discovery have been exhausted without success

*Stratford v. Umpqua Bank*
No. 100717-5

is a much higher burden on proponents of discovery than either *Shields* or *Clarke*

imposed. Washington has not adopted the apex doctrine as proposed by Umpqua.

II. WE DECLINE TO ADOPT THE APEX DOCTRINE

a.       The Civil Rules Prevent the Harms Addressed by the Apex Doctrine

Washington discovery rules already protect potential deponents—including

high-level officers—from unduly burdensome discovery. CR 26.[2] Umpqua impliedly

concedes this by arguing that courts consider apex factors (personal knowledge and

less intrusive means) when ruling on discovery requests for high-level officials. Trial

courts have wide discretion to limit discovery based on the needs of the case and will

do so if a party establishes that undue burden or expense would be avoided by a

protective order without impeding the discovery process. CR 26(c). Courts limit

discovery that "is obtainable from some other source that is more convenient, less

burdensome, or less expensive." CR 26(b)(1)(A). Umpqua simply had to show good

cause existed for the court to limit discovery based on the CR 26 factors.

Umpqua essentially asks us to amend the Civil Rules. The apex doctrine flips

the burden by requiring the party seeking to depose a high-level witness to show both

that the witness has unique, nonrepetitive, firsthand knowledge of the facts *and* that

---

[2] *See also Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 84 n.6, 265 P.3d 956 (2011) ("[P]articularly where corporate principals are named as parties, a trial court may determine that one source of response is sufficient or superior. *See* CR 26(b)(1)(A), (B); CR 26(c). We also recognize that some courts have acted to protect persons in upper levels of management from discovery where there is no warrant for requiring the participation of such individuals.").

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the party has exhausted less intrusive means, such as interrogatories and depositions of other employees, without success. This conflicts with our otherwise broad allowance for discovery, the rules of which adequately protect apex officials along with all other witnesses. We decline to amend the Civil Rules in this way.

      b.      <u>The Apex Doctrine Is Not Ubiquitous across Jurisdictions and Its Influence Appears To Be Declining</u>

Umpqua argues the apex doctrine is "almost universally accepted" in the federal system and in other states. Pet'r's Opening Br. at 4, 22. We disagree. We find no majority rule, and, of those courts that *have* adopted the apex doctrine, there is considerable variation in its application.

Federal courts have treated the apex doctrine inconsistently, noting that it "exists in tension with the otherwise broad allowance for discovery of party witnesses under the federal rules." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). The only federal appellate court to address the doctrine by name has rejected it. *Serrano*, 699 F.3d 884. Of the courts that have adopted the doctrine, some shift the burden of proof to the party seeking discovery, *see Degenhart v. Arthur State Bank*, No. CV411-041, 2011 WL 3651312, at *1 (S.D. Ga. Aug. 8, 2011) (court order), others require the party seeking a protective order to establish good cause through application of the apex factors, *see Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (court order); *Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-cv-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (court

order), while still others have developed a burden-shifting scheme, *see Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528-REB-KLM, 2011 WL 2535067, at *2 (D. Colo. June 27, 2011) (court order) (party seeking deposition initially must show the executive has some personal knowledge of relevant issues, then burden shifts and ultimately rests with executive invoking the apex doctrine).  Simply put, the "majority" of federal courts do not apply the apex doctrine in the way Umpqua asserts.  Rather, courts grapple with its apparent inconsistencies with discovery principles by developing burden-shifting schemes or other rationales for its application.

States are equally inconsistent when it comes to the apex doctrine.  Five states have adopted the apex doctrine, *see, e.g.*, *In re Amend. to Fla. Rule of Civ. Proc. 1.280*, 324 So. 3d 459 (Fla. 2021); *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*, 228 W. Va. 749, 724 S.E.2d 353 (2012); *Alberto v. Toyota Motor Corp.*, 289 Mich. App. 328, 796 N.W.2d 490, 494 (2010); *Crown Cent. Petrol. Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995); *Liberty Mut. Ins. Co. v. Super. Ct.*, 10 Cal. App. 4th 1282, 13 Cal. Rptr. 2d 363, 365-67 (1992), while at least seven states have rejected it, *see, e.g.*, *Gen. Motors, LLC v. Buchanan*, 313 Ga. 811, 874 S.E. 2d 52, 64 (2022); *BlueMountain*, 465 P.3d 122; *Crest Infiniti II, LP v. Swinton*, 2007 OK 77, ¶ 17, 174 P.3d 996, 1004; *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602 (Mo. 2002); *Andrews v. Devereux Found.*, 2021 WL 3465051 (Pa. Super. Ct. Aug. 6, 2021)

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(unpublished) (mem.); *Bradshaw v. Maiden*, 2017 WL 1238823 (N.C. Super. Ct. 2017) (unpublished) (court order); *Netscout Sys., Inc. v. Gartner, Inc.*, 2016 WL 5339454 (Conn. Super Ct. 2016) (unpublished). A Colorado court recently surveyed the case law and concluded that the apex doctrine is declining in influence. *BlueMountain*, 465 P.3d at 132.

We conclude that the apex rule is not widely followed; its application is inconsistent and its acceptance is waning.

III. APPLICATION

Having concluded that the apex doctrine is inconsistent with Washington discovery law, we now turn to the protective order before us.

We defer to a trial court's discovery rulings and will not interfere absent an abuse of discretion causing prejudice. *Doe*, 117 Wn.2d at 777. A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Cedell*, 176 Wn.2d at 694.

Umpqua had the burden of establishing good cause existed to limit discovery. "To establish good cause, the party should show specific prejudice or harm will result if no protective order is issued." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 423-24, 204 P.3d 944 (2009) (citing *Dreiling v. Jain*, 151 Wn.2d 900, 916-17, 93 P.3d 861 (2004)). When possible, parties should submit affidavits and concrete

*Stratford v. Umpqua Bank*
No. 100717-5

examples demonstrating the specific facts showing harm; broad and conclusory allegations of potential harm will not suffice. *Id.*; *see also Serrano*, 699 F.3d at 901.

Other than citing CR 26(b)(1) and (c), Umpqua did not present specific facts or argument as to how the depositions would be duplicative, burdensome, and harassing. Nor did it show prejudice or harm would result if the protective order was not issued. Instead it reiterated that the executives had no personal knowledge and that Stratford could obtain the information elsewhere, without naming any particular source. This is not enough to show good cause; thus, the trial court was well within its discretion to deny the protective order under CR 26.

## CONCLUSION

Washington has not adopted the apex doctrine, and we decline to do so now. The trial court properly denied Umpqua's motion for a protective order because it failed to establish good cause under CR 26. Accordingly, we affirm the trial court, lift the emergency stay, and remand for proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Stratford v. Umpqua Bank*
No. 100717-5

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Bender, J.P.T.

19